**Exhibit 2** To The Declaration of Michael L. Reel in Support of His Petition for De Novo Judicial Review

**U.S. Department of Justice**
Bureau of Alcohol, Tobacco, Firearms and Explosives

**Final Notice of Denial of Application, Revocation Suspension and/or Fine of Firearms License**

In the matter of:

☑ The application for license as a/an  9-93-039-01-PA-08345 _____ , filed by:

or

☐ License Number _____ as a/an

_____ , issued to:

Name and Address of Applicant or Licensee *(Show number, street, city, state and Zip Code)*

South Valley Firearms, LLC
1310 Ivy Street
Junction City, Oregon 97448

Notice is Hereby Given That:

☐ A request for hearing pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5) was not timely filed. Based on the findings set forth in the attached document, your

  ☐ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

   ☐ 15 calendar days after receipt of this notice, or  ☐ _____ ,

  ☐ license is suspended for _____ calendar days, effective _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

  ☐ licensee is fined $ _____ , payment due: _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

☑ After due consideration following a hearing held pursuant to 18 U.S.C. § 923(f)(2) and/or 922(t)(5), and on the basis of findings set out in the attached copy of the findings and conclusions, the Director or his/her designee concludes that your

  ☑ application for license described above is denied, pursuant to 18 U.S.C., 923(d).

  ☐ application for renewal of license described above is denied pursuant to 18 U.S.C. 923(d), effective:

   ☐ 15 calendar days after receipt of this notice, or  ☐ _____

  ☐ license described above is revoked pursuant to 18 U.S.C., 923(e), 922(t)(5) or 924(p), effective:

   ☐ 15 calendar days after receipt of this notice, or  ☐ _____

  ☐ license is suspended for _____ calendar days, effective _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

  ☐ licensee is fined $ _____ , payment due: _____ , pursuant to 18 U.S.C. § 922(t)(5) or 924(p).

If, after the hearing and receipt of these findings, you are dissatisfied with this action you may, within 60 days after receipt of this notice, file a petition pursuant 18 U.S.C. § 923(f)(3), for judicial review with the U.S. District Court for the district in which you reside or have your principal place of business. If you intend to continue operations after the effective date of this action while you pursue filing for judicial review or otherwise, you must request a stay of the action from the Director of Industry Operations (DIO), Bureau of Alcohol, Tobacco, Firearms and Explosives, at _____
(N/A)
_____ ,
prior to the effective date of the action set forth above. You may not continue licensed operations unless and until a stay is granted by the DIO.

Records prescribed under 27 CFR Part 478 for the license described above shall either be delivered to ATF within 30 days of the date the business is required to be discontinued or shall be documented to reflect delivery to a successor. See 18 U.S.C. 923(g)(4) and 27 CFR § 478.127.

After the effective date of a license denial of renewal, revocation, or suspension, you may not lawfully engage in the business of dealing in firearms. Any disposition of your firearms business inventory must comply with all applicable laws and regulations. Your local ATF office is able to assist you in understanding and implementing the options available to lawfully dispose of your firearms business inventory.

ATF Form 5300. 13
Revised September 2014

| Date | Name and Title of Bureau of Alcohol, Tobacco, Firearms and Explosives Official | Signature |
|---|---|---|
| 01/03/2025 | Wayne Bettencourt, Director, Industry Operations (DIO) | *[signed]* |

I certify that, on the date below, I served the above notice on the person identified below by:

☑ Certified mail to the address shown below.
Tracking Number: 7016 2710 0000 7745 9064

**Or**

☐ Delivering a copy of the notice to the address shown below.

| Date Notice Served | Title of Person Serving Notice | Signature of Person Serving Notice |
|---|---|---|
| 01/03/2025 | Wayne Bettencourt, Director, Industry Operations (DIO) | *[signed]* |

| Print Name and Title of Person Served | Signature of Person Served |
|---|---|
| Michael Lloyd Reel, Owner | |

Address Where Notice Served
1310 Ivy Street, Junction City, OR 97448

Note: Previous Edition is Obsolete

IN ACCORDANCE with 18 U.S.C. §§ 923(d) and 923(f) as well as 27 C.F.R. §§ 478.71 and 478.72, and upon review and consideration of the entirety of the administrative record which is comprised of the statements and exhibits provided by the parties at the hearing on this matter and fully incorporated herein, I hereby make the following findings and conclusions:

**Introduction**

South Valley Firearms, LLC ("Applicant") submitted an Application for Federal Firearms License, ATF E Form 7 (5310.12)/7CR (5310.16), dated January 19, 2023, pursuant to the Gun Control Act of 1968, as amended, 18 U.S.C. Chapter 44, and the regulations issued thereunder, 27 C.F.R. Part 478 (collectively, "GCA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  Government's Exhibit ("Gov. Ex.") 4.  Applicant is a limited liability company whose owner, Michael Reel, has been designated as its sole responsible person.  *Id.*; Transcript ("Tr.") at 19.

The GCA mandates that ATF issue a Federal firearms license to a qualified applicant. 18 U.S.C. § 923(c); 27 C.F.R. § 478.47(a).

On July 2, 2024, ATF issued a Notice of Denial of Application of License, ATF Form 4498 (5300.43) to Applicant.  Gov. Ex. 1.  On July 12, 2024, Applicant timely submitted a request for a hearing to review that Notice.  Gov. Ex. 2.

The hearing occurred on October 24, 2024.  I, Wayne Bettencourt, ATF Director, Industry Operations, Seattle Field Division, conducted the hearing from ATF's Portland Field Office. ATF Senior Attorney Peter Mickelson appeared on my behalf as Attorney for the Government. ATF Industry Operations Investigator Kathy Maier and ATF Area Supervisor Justin Lomax attended the hearing.  Applicant's owner/sole responsible person Michael Reel also appeared at the hearing.  Court reporter Neal Gross attended by video conference and transcribed the hearing. Both ATF and Applicant had the opportunity to present evidence and statements at the hearing. The statements and exhibits introduced at the hearing constitute the record in this proceeding.

**Findings**

Having reviewed the record in this proceeding, I make the following findings:

1. ATF first issued a Federal firearms license to Applicant in 2019.  Tr. at 20.  At that time, Applicant was an Oregon limited liability company, owned by Michael Reel.  Tr. at 20-21 and 47.

2. Michael Reel testified at the hearing that he had trouble purchasing firearms before ATF issued that license.  Specifically, Reel stated that in 2016 he began receiving "deny" responses to his firearm background checks.  Tr. at 74-76.  Reel said he knew that these denials had something to do with a misdemeanor harassment conviction he incurred in Deschutes County, Oregon in 2005.  Tr. at 75.  However, on his attorney's advice, Reel continued to try to purchase firearms.  *Id*.  These attempts were unsuccessful.  *Id*.

3. Michael Reel further testified at the hearing that sometime in 2019, his attorney and a Federal firearms licensee encouraged him to apply for his own Federal firearms license to "circumvent" laws barring him from acquiring firearms. Tr. at 76. From the available record, it is unclear whether ATF personnel were aware of the full extent of Reel's criminal history and, more specifically, whether they knew all the details of Reel's 2005 misdemeanor harassment conviction. Reel now claims that after applying for the license he told an ATF employee that he had an "arrest record". Tr. at 76. This claim does not address whether ATF had specific information about the circumstances and nature of Reel's 2005 conviction. Regardless, ATF issued a Federal firearms license to Applicant.[1]

4. Under Michael Reel's control, Applicant operated as a retail firearms dealer for several months until Reel initiated a firearm background check on himself and again received a "deny" response. Tr. at 77. Reel then contacted the Oregon State Police ("OSP"), the point of contact for firearm background checks in Oregon, and requested an explanation for the denial. *Id*. The OSP informed Reel that he was prohibited from possessing firearms under Federal law. *Id*.

5. In May 2021, Investigator Maier initiated a compliance inspection of Applicant. Tr. at 23. During the course of that inspection, OSP advised ATF that Michael Reel had been denied on a firearm background check because of his 2005 misdemeanor harassment conviction. Tr. at 24. ATF personnel in the Portland area office, through further investigation, confirmed that on January 14, 2005, Reel was convicted in the Deschutes County circuit court of one count of domestic violence harassment, a misdemeanor offense under Or. Rev. Stat. § 166.065. *State of Oregon v. Michael Lloyd Reel*, Case No. MI04-2736 (Deschutes Cty. Cir. Ct.); Gov. Ex. 6 and 7; Tr. at 24.

6. Investigator Maier thereafter obtained documents related to the conviction, including police reports, the Information filed by the district attorney, Michael Reel's subsequent no contest plea, and the judgment of conviction. Gov. Ex. 5, 6, 7, and 8; Tr. at 24 and 49-60. The district attorney's Information alleged that on November 21, 2004, Reel unlawfully and intentionally harassed and annoyed Melissa Alberts by subjecting her to offensive physical contact. Gov. Ex. 5; Tr. at 49-53. The Information further alleged that the offense constituted domestic violence. *Id*. A police report of Reel's arrest alleged that he had pinned Alberts on her back in a public area and attempted to strike her twice before police officers could intervene and subdue him. Gov. Ex. 8; Tr. at 57-58. At the time, Reel and Alberts were in a romantic relationship and had lived together for approximately two years. Gov. Ex. 8; Tr. at 56-60.

7. Based upon this record, and a review of state and Federal case law, ATF determined that Michael Reel's conviction constituted a qualifying misdemeanor crime of domestic violence, as defined in 18 U.S.C. § 921(a)(33), and that Reel therefore was subject to Federal firearm disabilities under 18 U.S.C. § 922(g)(9). Tr. at 24.

---

[1] Investigator Maier testified at the hearing that she did not know whether ATF was aware of Reel's 2005 misdemeanor harassment conviction when it issued that license.

8. Investigator Maier testified that she communicated this determination to Michael Reel, and explained that because of his conviction, he could not continue to hold a Federal firearms license, and that ATF planned to proceed with revocation of the license issued in 2019. Tr. at 25-26. Investigator Maier further testified that Reel responded that he had obtained a "set aside" of his conviction and believed he was no longer subject to any firearm disabilities. Tr. at 26. In fact, Reel had obtained this "set aside" on March 3, 2021, just two months before the ATF compliance inspection. Gov. Ex. 9. The "set aside" was granted under Or. Rev. Stat. § 137.225, which allows an Oregon court to seal an individual's record of arrest and conviction under certain conditions. *Id*. Still, despite his disagreement with ATF, Reel decided to surrender Applicant's Federal firearms license at that time. *Id*.

9. On August 16, 2021, the ATF Seattle Field Division followed up by issuing a formal advisement letter to Michael Reel, informing him that because of his 2005 misdemeanor harassment conviction he was prohibited from possessing firearms and ammunition under section 922(g)(9). Gov. Ex. 3; Tr. at 28-30. ATF further advised Reel that the "set aside" that he received in March 2021 did not remove this prohibition. Gov. Ex. 3. Citing Oregon case law, ATF explained to Reel that the section 137.225 procedure did not erase his conviction record but only sealed it, and that the record could be unsealed by a court order and used against him under conditions set forth in the statute. *Id*. ATF explained that the procedure did not constitute a true "set aside" within the meaning of the GCA and was insufficient to relieve Reel of the firearm prohibition imposed on him under Federal law. *Id*. The letter instructed Reel to dispossess himself of any firearms and ammunition in his control and warned him that the failure to do so could lead to criminal penalties, including the seizure and forfeiture of firearms. *Id*. By his own acknowledgment, Reel received this letter and understood its warning. Tr. at 86.

10. The letter from ATF notwithstanding, Michael Reel soon purchased seven more firearms from a "gun store". Tr. at 79. According to Reel, he was able to pass firearm background checks each time with a Unique Personal Identification Number ("UPIN") he had obtained from the FBI. Applicant's Exhibit ("App. Ex.") 1; Tr. at 79. It is not clear from the record why the FBI issued a UPIN to Reel. However, this activity came to a stop when Reel attempted to purchase more firearms in December 2023 and was again denied on his firearm background checks. Tr. at 79.

11. Applicant submitted its application for the subject Federal firearms license on April 27, 2023. Gov. Ex. 4; Tr. at 31-32. Michael Reel signed the application. Gov. Ex. 4.

12. As part of the application, Michael Reel submitted a Responsible Person Questionnaire, identifying himself as Applicant's owner and the sole individual responsible for the operation of Applicant's proposed firearm business. Gov. Ex. 4; Tr. at 34. In completing the questionnaire, Reel was required to provide a response to the question, "Have you ever been convicted in any court of a misdemeanor crime of domestic violence?" Gov. Ex. 4; Tr. at 37. Reel answered "no" to this question. *Id*.

13. Investigator Maier was assigned to conduct a qualification inspection of Applicant in May 2023.  Tr. at 37-38.  In July 2023, Investigator Maier contacted Michael Reel by telephone and informed him that he remained prohibited from possessing firearms under Federal law and was ineligible for licensing.  Tr. at 39.  Reel responded that he disagreed and had received conflicting information from the FBI National Instant Criminal Background Check System.  App. Ex. 1; Tr. at 39.

14. On May 28, 2024, while the subject license application remained pending, Michael Reel obtained a court order restoring his state firearm rights under Or. Rev. Stat. § 166.274.  Gov. Ex. 2.  Reel offered a copy of the court order as a hearing exhibit.  App. Ex. 1; Tr. at 66-68.

15. Pursuant to 18 U.S.C. § 923(d)(1)(B), ATF may deny an application for a Federal firearms license if the applicant (including, in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association) is prohibited from possessing firearms under 18 U.S.C. § 922(g).  *See Jennings v. Mukasey*, 511 F. 3d 894, 898 (9th Cir. 2007); *Nat'l Lending Group, L.L.C. v. Mukasey*, 2008 WL 5329888, **10-11 (D. Ariz. Dec. 19, 2008), *aff'd Nat'l Lending Group, L.L.C. v. Holder*, 365 F. App'x 747 (9th Cir. 2010).

16. Pursuant to 18 U.S.C. § 922(g)(9), it is unlawful for any person who has been convicted in any court of a misdemeanor crime of domestic violence to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

17. The GCA defines the term "misdemeanor crime of domestic violence" as any misdemeanor under Federal, state, tribal, or local law, that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, by a person similarly situated to a spouse, parent, or guardian of the victim, or by a person who has a current or recent former dating relationship with the victim."  18 U.S.C. § 921(a)(33)(A).

18. The GCA further provides that a person shall not be considered to have been convicted of such an offense unless the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel and knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.  18 U.S.C. § 921(a)(33)(B)(i).

19. Under the GCA, "a person shall not be considered to have been convicted of such an offense if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon,

expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(33)(B)(ii).

20. Applicant's owner/responsible person, Michael Reel, was convicted of a qualifying "misdemeanor crime of domestic violence" for purposes of sections 921(a)(33) and 922(g)(9). First, Reel's offense of conviction, Or. Rev. Stat. § 166.065, is a misdemeanor under state law that has, as an element, the use of physical force. Reel was charged under subparagraph (1)(a)(A) of the statute, which provides that "a person commits the crime of harassment if the person intentionally . . . [h]arasses or annoys another person by . . . [s]ubjecting such other person to offensive physical contact." Count 1 of the district attorney's Information alleged that Reel "did unlawfully and intentionally harass or annoy Melissa Alberts by subjecting her to offensive physical contact." Gov. Ex. 5. Reel was convicted based upon his no-contest plea to this count. Gov. Ex. 6 and 7. Offensive physical contact, as used in subparagraph (1)(a)(A), constitutes "physical force" for purposes of section 921(a)(33)(A). *See United States v. Castleman*, 572 U.S. 157, 162-63 (2014) (holding that the 'physical force' requirement of section 921(a)(33)(A) is satisfied by the degree of force that supports a common-law battery conviction, namely offensive touching). *See also State v. Eggers*, 558 P. 3d 830, 841-42 (Or. 2024) (citing *Castleman* and holding that section 166.065(1)(a)(A) is a qualifying misdemeanor crime of domestic violence for purposes of an Oregon firearm statute that mirrors sections 922(g)(9) and 921(a)(33)(A)).[2]

21. Second, a qualifying domestic relationship existed between Michael Reel and Melissa Alberts. It is well-established that individuals who reside together in the context of a romantic relationship have a qualifying domestic relationship within the meaning of section 921(a)(33)(A). *See United States v. White*, 593 F. 3d 1199, 1204 (11th Cir. 2010) (concluding that a live-in girlfriend was similarly situated to a spouse, without discussion of the length of time the defendant and victim resided together); *Buster v. United States*, 447 F. 3d 1130, 1133 (8th Cir. 2006) (same); *United States v. Shelton*, 325 F. 3d 553, 563 (5th Cir. 2003) (concluding that a live-in girlfriend of two months was similarly situated to a spouse); *White v. Dep't of Justice*, 328 F. 3d 1361, 1369 (Fed. Cir. 2003) (concluding that a live-in girlfriend of 10 months, followed by intermittent co-habitation for another year, was similarly situated to a spouse); *United States v. Denis*, 297 F. 3d 25, 31 (1st Cir. 2002) (concluding that a battery against a live-in girlfriend qualified as a 922(g)(9) predicate). Here, Reel was identified as Alberts boyfriend in police documents and Alberts confirmed that they had resided together for years. Gov. Ex. 8; Tr. at 59-60.

---

[2] Though section 166.065(1) also criminalizes other conduct not involving force, the statute is divisible and amenable to the modified categorical approach, under which a court may review the judicially noticeable documents from Michael Reel's conviction record to determine whether he was convicted under the "physical force" prong of the statute and whether the conviction thus qualifies as a section 922(g)(9) predicate. *See, e.g., Castleman,* 572 U.S. at 169. *Cf. Tristan v. United States*, No. 6:16CV01137, 6:13CR00542, 2018 WL 3117637, **2, 3 (D. Or. Jun. 25, 2018) (concluding that a similar Oregon statute, second-degree assault, is divisible and amenable to the modified categorical approach because the statute's subparts set forth functionally separate crimes).

22. Third, Michael Reel's conviction met the procedural requirements of section 921(a)(33)(B)(i). Reel was represented by counsel in the matter, and entered a no-contest plea, thereby waiving his right to a jury trial. Gov. Ex. 6.

23. Fourth, Michael Reel's "set aside" did not remove his Federal firearm prohibition. The procedure set forth in Or. Rev. Stat. § 137.225 does not qualify as a true "set aside" within the meaning of the GCA. The term "set aside", as used in the GCA—specifically, sections 921(a)(20) and 921(a)(33)(B)(ii)—refers to a procedure that destroys or erases the fact of a conviction, rendering it a legal nullity. *See Jennings v. Mukasey*, 511 F. 3d 894, 899 (9th Cir. 2007); *Wyoming ex rel. Crank v. United States*, 539 F. 3d 1236, 1246 (10th Cir. 2008). *See also United States v. Eubanks*, 617 F. 3d 364, 367-68 (6th Cir. 2010); *Van Oudenhoven v. Wisconsin Dep't of Justice*, 10 N. W. 3d 402, 409-14 (Wis. Ct. App. 2024); *Rieff v. Illinois State Police*, No. 4-23-0397; 2024 WL 448335, **4-5, 7 (Ill. App. Ct. Feb. 5, 2024). Reel's set aside under section 137.225 did not erase the fact of his conviction or render it a legal nullity. Rather, a state court sealed his conviction and arrest records. Those records are maintained under seal by the OSP. Significantly, the records may be unsealed by a court under specific circumstances set forth in the statute, all for the purpose of imposing legal consequences on Reel. *See State v. Langan*, the 718 P. 2d 719, 722, n. 3 (Or. 1986). *See also State v. Hartford*, 161 P. 3d 331, 334 (Or. Ct. App. 2007). It is well-established in Oregon case law that even when a conviction has been set aside and sealed under section 137.225, parties—including state agencies—are not required to treat that conviction as if it ceased to exist. *See*, *e.g.*, *Leong's, Inc. v. Oregon State Lottery Comm'n*, 921 P. 2d 988, 992 (Or. Ct. App. 1996); *Bahr v. Statesmen Journal Co.*, 624 P. 2d 664, 666-67 (Or. Ct. App. 1981). *Cf. Biggs v. Nicewonger Co.*, 897 F. Supp. 483, 485 (D. Or. 1995); Or. Atty. Gen. Op. 2000-1, 2000 WL 992134 (Jul. 11, 2000). ATF, likewise, is not obligated to ignore Reel's conviction and his resulting Federal firearm disability when, in other contexts, that conviction can be unsealed and disclosed in an Oregon judicial proceeding.

24. Similarly, Michael Reel's restoration of state firearm rights under Or. Rev. Stat. § 166.274 did not remove his Federal firearm prohibition. Restoration of an individual's state firearm rights may have the effect of removing a concurrent Federal firearm prohibition only if the state restoration is accompanied by the loss and reinstatement of the individual's core civil rights. Convicted domestic violence misdemeanants ordinarily do not lose their core civil rights, and therefore they cannot benefit from a state restoration of firearm rights. *See United States v. Brailey*, 408 F. 3d 609, 612-13 (9th Cir. 2005) (collecting cases and concluding that "in states where civil rights are not divested for misdemeanor convictions, a person convicted of a misdemeanor crime of domestic violence cannot benefit from the [F]ederal restoration exception [in section 921(a)(33)(B)(ii)]". *See also United States v. Chovan*, 735 F. 3d 1127, 1131-33 (9th Cir. 2013) (abrogated on other grounds). Because Reel did not lose his core civil rights as a result of his 2005 misdemeanor harassment conviction, his restoration of state firearm rights did not remove his Federal firearm prohibition.

25. For the foregoing reasons, the record establishes that Michael Reel is prohibited under the GCA from shipping or transporting in interstate or foreign commerce, or possessing in or

affecting commerce, any firearm or ammunition, or receiving any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

26. Nevertheless, as to Michael Reel's "no" answer to the application question concerning prior misdemeanor domestic violence convictions, the record does not clearly establish that Reel willfully made a false statement. Although ATF had advised Reel in 2021 that he was subject to a Federal firearm prohibition, he continued to pass firearm background checks, at least for a short period of time, and appears to have received conflicting guidance from the FBI concerning his status under Federal law. Additionally, Reel claims that he has held an Oregon concealed handgun license since he was 21, and that it has never been revoked by the state. Tr. at 90. Reel further claims that his lawyers have consistently told him that he is not subject to firearm disabilities. Tr. at 89. Under the circumstances, I find that Reel's answer on the license application, though imprudent and clearly in conflict with guidance he received from ATF, cannot reasonably be considered a willful false statement and will not be relied upon in determining whether ATF should approve the subject application.[3]

**Conclusions**

I conclude that:

1. Applicant's owner/responsible person, Michael Reel, is ineligible to hold a Federal firearms license in his own name or serve as a responsible person with a federally licensed firearm business.

2. I further conclude that Applicant, with Michael Reel as its owner and responsible person, is not qualified to receive a Federal firearms license.

As such, the Application for Federal Firearms License submitted by South Valley Firearms, LLC, is hereby DENIED.

Date this 3rd day of January, 2025.

Wayne Bettencourt  
Director, Industry Operations  
Seattle Field Division

---

[3] This issue of Reel's continued acquisition of firearms was discussed after the hearing, off the record, and Reel has addressed the situation by removing all firearms from his custody.

**U.S. DEPARTMENT OF JUSTICE**
**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES**

1201 NE LLOYD BLVD STE 720
PORTLAND, OR 97232-1274

**OFFICIAL BUSINESS**
**PENALTY FOR PRIVATE USE, $300**



7016 2710 0000 7745 9064



Mr. Michael Reel
1310 Ivy Street
Junction City, OR 97448

E 1363.6

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Michael Reel
1310 Ivy Street
Junction City, OR 97448

9590 9402 6286 02274 0960 28

2. Article Number (Transfer from service label)
7016 2710 0000 7745 9064

PS Form 3811, July 2020 PSN 7530-02-000-9053

## COMPLETE THIS SECTION ON DELIVERY

A. Signature
X ___
☐ Agent
☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Priority Mail Express®
☐ Adult Signature
☐ Registered Mail™
☐ Adult Signature Restricted Delivery
☐ Registered Mail Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☒ Signature Confirmation™
☐ Collect on Delivery
☐ Signature Confirmation Restricted Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

Domestic Return Receipt



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $ 4.85

Extra Services & Fees (check box, add fee as appropriate)
☒ Return Receipt (hardcopy) $ 4.70
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage $ 9.92

Total Postage and Fees $ 9.90

Sent To Michael Reel
Street and Apt. No., or PO Box No. 1310 Ivy Street
City, State, ZIP+4® Junction City, OR 97448

7016 2710 0000 7745 9064

PS Form 3800, April 2015 PSN 7530-02-000-9047  See Reverse for Instructions